# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## TYLER DIVISION

**LOREE PERRY, Individually and**
**On Behalf of All Others Similarly Situated,**

                                                           **PLAINTIFF(S)**


**v.**                         **NO. 6:23-CV-00489-JDK**

**SHEIKHANI GROUP D/B/A VAPE CITY,**
**ALI SHEIKHANI,**

**SAVAGE ENTERPRISES,**
**SAVAGE ELIQUID CORPORATION, DELTA EXTRAX,**
**CHRISTOPHER G. WHEELER,**
**MATT WINTERS, MATTHEW MONTESANO,**
**JON DOUGHERTY,**

**LIFTED MADE DBA LIFTED LIQUIDS, INC,**
**BARRY HOLLINGSWORTH,**
**GERARD M. JACOBS**, **WILLIAM C. JACOBS**,
**NICHOLAS WARRENDER**

**CRAVE d/b/a FEEL GOOD INDUSTRY LLC,**
**EDGAR A. MOHAMMED, SAMUEL HABIB**
**SIG DISTRO, JULIA HAMIEH,**

**CALI KULTURE D/B/A MELLOW MONKEY,**
**RARE HEMP COMPANY, ALAN WADHWANIA SAM HAJIYANI**

**ANTHONY CAPONE, PACKWOODS,**

**MARIN ANALYTICS, LLC,**
**ISO ANALYTICS**
**PUR ISO LABS LLC, AUSTIN RUPLE,**

**AND JOHN DOES 1-1000.**

                                           **DEFENDANTS.**

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, **LOREE PERRY, Individually and On Behalf of All Others Similarly Situated,** by and through counsel, Wallace, Martin, Duke & Russell, PLLC and Sutter and Gilham, PLLC; and, for this Second Amended Complaint, Plaintiff alleges the following upon information and belief, except for the allegations pertaining specifically to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

Plaintiff, **LOREE PERRY**, is a resident of the State of Texas who purchased delta-8 ("D8") vape pens (the "Products"), which were manufactured, distributed, and/or sold by Defendant(s). The Controlled Substances Act of 1970 prohibits the manufacturing, distribution, and sale of cannabis products with a delta-9 ("D9") tetrahydrocannabinol ("THC") concentration of more than 0.3 percent on a dry weight basis.

Plaintiff, **LOREE PERRY**, purchased Products manufactured, distributed, tested, and/or sold by Defendant(s) that contained a concentration of more than 0.3 percent on a dry weight basis of D9 THC. Plaintiff intended to purchase the Products labeled as D8 vape pens but was unlawfully sold vape pens containing illegal amounts of D9 THC.

## JURISDICTION AND VENUE

1. Subject Matter Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 18 U.S.C. § 1964(c), 28 U.S.C. § 1332(d)(2) and 28

USC 1331, as well as 28 USC 1367.

2.      The aggregate amount in controversy exceeds $50 million, including any statutory damages, exclusive of interest and costs.

3.      Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district. More specifically, Defendants manufactured, distributed, and/or sold the Products in this district, and the actions giving rise to the claims occurred within this district.

4.      Plaintiff purchased the Products on July 20, 2023, from Defendant, **Vape City**, located at 3849 State Hwy. 64 West, Tyler, TX 75704.

## PARTIES

5.      Plaintiff, **LOREE PERRY**, is a resident of the State of Texas.

6.      Defendant, **SHEIKHANI GROUP D/B/A VAPE CITY,** is a domestic Texas corporation with its headquarters located at 13201 Northwest FWY, STE 101, Houston, Texas 77040-6012. Vape City's registered agent for service is Ali Sheikhani at 13201 Northwest FWY, STE 101, Houston, Texas 77040-6012. Vape City is one of the largest THC vape pen sellers in the State of Texas, with over 200 retail locations across the State of Texas.

7.      Defendant, **ALI SHEIKHANI**, is the **CEO** of **SHEIKHANI GROUP D/B/A VAPE CITY**. **ALI SHEIKHANI** conducted or participated, directly or indirectly, in the conduct of his company's affairs.   18 U.S.C. § 1962(c). The enterprise is an association of companies that work together to sell marijuana using

the wires, and each Defendant's participation is essential to the conduct of the enterprise's goal, which is to sell marijuana. Therefore, Defendants participate in the operation or management of a RICO enterprise, see *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) because each Defendant is an enterprise member who plays a part in conducting the enterprise's affairs. Defendant has contributed money and labor that furthered the pursuit of the profitable sale of D8 vape pens whose D9 THC content exceeded the legal limit. John Does 10-20 are the entities presently unknown to the Plaintiff who sold the illegal D8 products to Vape City or have provided financing. John Does, 77-80 are officers, members, and directors of Vape City.

8.     Defendant, **SAVAGE ENTERPRISES** (aka Savage Eliquid Corporation), is a corporation organized and existing under the general business entity and corporation law of the state of Wyoming and does business in the States of Arkansas, California, Alabama, Florida, Hawaii, Idaho, Kentucky, and other states. John Does 21-30 are individuals who have provided credit or other financing to Savage or have provided Savage with distillate, like **PUR ISO LABS, LLC**. Savage Enterprises has a business address and mailing address of 7 Vanderbilt, Irvine, California, 92618-2011.  Their registered agent for service is Incorp Services Inc., 4037 US Highway, 231 STE A, Wetumpka, AL 36093-1224. Savage Enterprises Corporation and Savage Eliquid Corporation have the same registered agent name and address. Savage Enterprises also uses the same registered agent with an address of 101 E 9th Ave, Suite 12B, Anchorage, AK, 99501-3651. Savage

Enterprises was also incorporated in Arkansas on September 22, 2022, as a place of incorporation with a foreign corporation shown as California. Savage Enterprises shows a registered agent of service as Incorp Services Inc. 4250 N Venetian Ln, Fayetteville, AR 72703-5077. The corporate officers are listed as **Christopher Wheeler** as a shareholder and **Matt Winters** as President and shareholder. Corporate filings show five shareholders: Christopher Wheeler - 40.5%; Mathew Winter - 40.5%; Brittany Hawkins - 10%; Ernest Ciaccio - 4.5%; and Abraham Sahagun - 4.5%. Savage markets its products through delta-8-THC and delta-10-THC brand Delta Effex (www.DeltaEffex.com), CBD brand Savage CBD (www.SavageCBD.com), e-liquid brand Vape 100 (www.vape100.co) **Delta Extrax and Savage CBD** are organizations under the umbrella of Savage Enterprises. **Jon Dougherty** holds himself out as the president of Savage Enterprises on social media platforms such as LinkedIn. The corporate officers are also shown as **Matthew Montesano**, Chief Financial Officer; **Matthew Winters**, Chief Executive Officer; and **Brittney Hawkins**, Director. These persons are referred to the Savage Defendants hereinafter.

9.    **Gerard M. Jacobs** ("GMJ") and **William C. "Jake" Jacobs** ("WCJ"), Nicholas Warrender, and Lifted Liquids Inc. sold the URB products at issue to Defendant, Vape City. Rapidly growing and profitable LFTD Partners Inc. ("LFTD Partners" or the "Company") (OTCQB: LIFD) owns Lifted Made, Kenosha, WI, which manufactures the award-winning brand of hemp-derived cannabinoid products Urb Finest Flowers. Nicholas S. Warrender, Vice Chairman and COO of

LFTD Partners, and founder and CEO of Lifted Made, said, "During the past two years, Lifted Made has steadily expanded from a small 3,300 sq. ft. leased space in Zion, Illinois, to three leased spaces with a total of 24,238 sq. ft. in Kenosha, Wisconsin, which has allowed us to grow from about 10 employees to over 125. Publicly traded LFTD Partners Inc., Jacksonville, FL (OTCQB ticker symbol LIFD) is the parent corporation of Lifted Made, Kenosha, WI (www.LiftedMade.com), which manufactures and sells hemp-derived cannabinoid products under its Urb Finest Flowers brand. LFTD Partners Inc. also owns 4.99% of CBD-infused beverage and products maker Ablis Holding Company (www.AblisBev.com) and of craft distillers Bendistillery Inc. d/b/a Crater Lake Spirits (www.CraterLakeSpirits.com) and Bend Spirits, Inc. (www.Bendistillery.com) all located in Bend, OR. Defendant, **LIFTED MADE dba LIFTED LIQUIDS, INC.,** has a primary business address in Kenosha, Wisconsin, and advertises an Illinois hemp license #1204-291. Defendant, Lifted Liquids, has corporate filings in the following states: CA, CO, FL, GA, IL, IN, KY, LA, MD, MN, MS, NJ, NC, OH, TX, VA, VT, and may be registered in other states. Lifted Liquids, Inc. has the following corporate officers listed: **Barry Hollingsworth**, Chief Financial Officer; **Gerard M. Jacobs**, Secretary; and **Nicholas S. Warrender**, Chief Executive Officer. Lifted Liquids' Registered Agent is Corporate Creations Network Inc., located at 4640 Admiralty Way FL5, Marina Del Rey, CA 90292. John Does 31-40 are individuals who have provided credit or other financing to Lifted Made or have provided Lifted Made with distillate. These are the Lifted Made Defendants.

**10.** Defendant, **CRAVE**, operates a website with an internet address of Cravedisposable.com. There is no business address or contact person on the website. A business search yielded no usable information to identify corporate officers or headquarters. There are two phone numbers listed on the website: (781) 995-7134 and (617) 943-2040. The following information was obtained by searching the telephone numbers:

a. A search of the (781) 995-7134 telephone number traced back to **Feel Good Industry LLC**, a corporation organized and existing under the general business entity and corporation law of Massachusetts. Their registered agent for service is Edgar A. Mohammed, located at 10 Henshaw St, Woburn, MA, 01801. Corporate filings indicate the following officers: **Edgar A. Mohammed**, Manager, and **Samuel Habib**, Member.

b. A search of the (617) 943-2040 telephone number traced back to a company named **Sig Distro**. Sig Distro is located at 78 Olympia Ave, Unit C, Woburn, MA, 01801. A business search yielded no usable information to identify corporate officers or any additional locations or information. An online article posted by HeadQuest Magazine contained an interview with **Julia Hamieh**, Sig Distro's warehouse and marketing manager, and stated that Crave is Sig Distro's line of disposable vapes. They are advertised over the wire. (https://www.headquest.com/sig-distro/).  John Doe 74 is their ISO.

c. **Crave**, Crave+, and its affiliates are colluding with **ISO Analytics** to

produce fraudulent COAs. John Does 5-10 are the officers of Crave. They are sued as the Crave Defendants.

11.     Defendant Kali Culture d/b/a, **MELLOW MONKEY**, operates a website with an internet address of Mellow-monkey.com. There is no business address or contact person on the website. A business search yielded no usable information to identify corporate officers or headquarters, but ALAN WADHWANIA and SAM HAJIYANI are principals who knew that the vapes they were selling over the wires contained more than .3% D9 THC by dry weight. The COA issued by **PharmLabs SD** states that the tests on the Mellow Monkey products were completed for a business named Rare HempCo. A business search of Rare HempCo yielded no usable information to identify corporate officers or headquarters. John Does 51-60 are individuals who have provided credit or other financing to Mellow Monkey, who are officers, who are directors, or who have provided Mellow Monkey with distillate. They are sued as Mellow Monkey Defendants.

12.     **ANTHONY CAPONE**, the CEO of **Packwoods**, manufactures a D8 vape pen with a strain named Sundae Driver and Melonade and advertises these products over the internet for sale in Texas. Packwoods advertises these products over the wire.  See <u>Packwoods | Superior cannabis products.</u>  John Does 61-70 are individuals who have provided credit or other financing to Packwoods, who are directors, who are officers, or who have provided Packwoods with distillate. These are the Packwood Defendants.

13.     **MARIN ANALYTICS** is a lab that operates in California that

produced one or more of the fraudulent COAs for one or more products identified herein.

14. **ISO ANALYTICS** is a lab that operates in California that produced one or more of the fraudulent COAs for one or more products identified herein.

15. **PUR ISOLABS, LLC,** is a limited liability company with its principal place of business in Bergheim, Texas, whose managing member or founder is Austin Ruple. One or more Defendants bought distillate containing more than .3% D9 THC by dry weight from Pur IsoLabs. In its effort to sell its products over the internet, Pur IsoLabs and Ruple falsely state and warrant that they have been proudly crafting and curating the finest collection of quality hemp products to support a balanced lifestyle:

> Our passion for wellness, combined with an extensive understanding of the science behind the hemp plant, has resulted in our custom, proprietary formulations of exceptionally effective products.
> With top quality, yet limited ingredients Pur IsoLabs products are designed toward purity and potency, delivering an unsurpassed CBD experience to customers. From rigorous standards in selecting only the finest USA grown hemp to reliable 3rd party testing of raw materials and finished products, Pur IsoLabs has positioned itself as a trusted source in the hemp CBD industry. As the first CBD company in Texas, and with the opening of our manufacturing and formulation lab, Texas Pur, we are committed to helping people by providing reliability, transparency, and an unrivaled quality product.
>
> All products contain less than 0.3% THC and are federally legal via the 2018 Farm Bill. State by state restrictions may apply. Check your state's hemp regulatory agency for specifics. Any statements herein have not been evaluated by the Food and Drug Administration. These products are not intended to diagnose, treat, cure, or prevent any disease or conditions.

## GENERAL ALLEGATIONS OF FACT

**16.** Plaintiff, **LOREE PERRY**, purchased eight products at the **VAPE CITY** store located at 3849 State Hwy 64 West, Tyler, TX, 75704, all within the State of Texas, on or about July 20, 2023.

**17.** Plaintiff Perry purchased the following eight products:

**a.** Mellow Monkey, brand name Knockout, with a strain name of Pineapple Kush manufactured by Defendant, **Mellow Monkey**/Rare HempCo.

**b.** EXTRAX, with a strain name of Blueberry Kush, Fire OG, and Pie Hoe, manufactured by Defendant, **Savage Enterprises**.

**c.** URB, with a strain named Lemonade Kush manufactured by Defendant, **Lifted Made dba Lifted Liquids, Inc**.

**d.** Crave**,** brand name Chill Blend, with a strain name of White Rhino manufactured by Defendant, **Crave**.

**e.** Packwoods, with a strain name of Sundae Driver and Melonade manufactured by Defendant, **Packwoods**.

**18.** On December 20, 2018, President Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (2018 Farm Bill). The 2018 Farm Bill legalized hemp production for all purposes within the parameters laid out in the statute. As defined in the 2018 Farm Bill, the term "hemp" means the plant species Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration

of not more than 0.3 percent on a dry weight basis. Delta-9 tetrahydrocannabinol, or THC, is the primary intoxicating component of cannabis. Cannabis with a THC level exceeding 0.3 percent is considered marijuana, which remains classified as a Schedule I controlled substance regulated by the Drug Enforcement Administration (DEA) under the Controlled Substances Act (CSA.)

19.     D9 THC is the psychoactive component of what is commonly known as marijuana.

20.     D8 THC is also psychoactive, but D8 THC is hemp-derived and is not a controlled substance under federal law.  If D8 THC is produced, D9 THC is also produced.

21.     Hemp-derived D9 THC can be present in a product so long as the amount does not exceed 0.3% D9 THC by dry weight.  Here, all of the products Plaintiff purchased, including products marketed by the Retail Defendant, contain an illegal amount of D9 THC.

22.     Plaintiff purchased these Products anticipating and expecting them to be legal D8 THC products because the Products were warranted to contain less than .3% D9 THC by dry weight.

23.     Plaintiff wanted a legal amount of hemp-derived delta-9 tetrahydrocannabinol (hereinafter "hemp-derived D9 THC").  Plaintiff did not purchase a product containing a legal amount of Delta 9 Tetrahydrocannabinol because of each Defendant's deception.

24.     Unbeknownst to Plaintiff, the Products, contrary to the label,

contained an illegal amount of D9 THC and less than the advertised amount of THC.

25. Plaintiff purchased two URB, THC Lemonade Kush, live resin vape cartridges manufactured by the Lifted Made Defendants. The QR code on the URB product boxes produces a Certificate of Analysis (COA) from PharmLabs SD, a San Diego, CA laboratory. The COA indicates that D9 THC was "UI"; not identified. Pharm Labs SD never advised Lifted Made that its products were in compliance with the Farm Bill Act. PharmLabs SD has created COAs from other products Plaintiff had tested, and those reported D9 results are far below tested results from an independent 3rd party lab. Lifted Made dba Lifted Liquids are falsifying information on their product containers, misleading consumers with false COA information, and colluding with laboratories to obtain D9 results that falsify the accurate amount of the D9 cannabinoid that is in their products, in this case, THC Lemonade Kush. Many URB products were purchased from various retailers and, from testing, found that URB products are consistently underreporting the D9 cannabinoid results. Plaintiff had one of those Lemonade Kush vape cartridges tested by a 3rd party laboratory, Infinite Chemical Analysis, in San Diego, CA. Infinite Chemical Analysis is licensed to test both cannabis and hemp. The results for the D9 cannabinoid are far above what is allowed by law. One cartridge was retained as a control unit.

26. Defendant, **SHEIKHANI GROUP d/b/a VAPE CITY,** (The retail Defendant) markets and sells D8 THC Vape Pens manufactured, distributed, and/or

sold by Defendants, **Mellow Monkey**, **Savage Enterprises**, **Crave**, **Lifted Made**, and **Packwoods**. (The Manufacturer Defendants collectively) Vape City has over 200 retail locations across Texas and may have additional locations in other states.

27.    Each Defendant, **Mellow Monkey**, **Savage Enterprises**, **Crave**, **Lifted Made**, and **Packwoods,** warrants that these D8 THC Vape Pens, on the label and through fraudulent certificates of analysis, are compliant with the Hemp Farming Act of 2018, meaning that these products are to contain no more than 0.3% hemp derived D9 THC by dry weight.  This representation is false because the Products contained more than 0.3% hemp-derived D9 THC by dry weight and less than the advertised amount of THC.

28.    Each Defendant intends for Plaintiff and the Class to rely upon these false representations because Defendant also warrants and represents through its website:

> "A Certificate of Analysis or "COA" is a document from an accredited laboratory that shows the number of various cannabinoids in a product.
>
> Our company sends every batch of every product made to a third (3rd) party laboratory for testing to protect our customers. Our COAs also certify that our products have as much CBD and other cannabinoids as we advertise.
>
> Once you receive your product, there should be a QR code on the label that you can scan, and you will be taken to a web page with the product's COA."

29.    The representations made by Defendants are misleading because the product label and the COAs give consumers a warrant that each Product contains a legal amount of D9 THC ingredients even though it does not.

**30.** The Products are manufactured, distributed, and/or sold individually by each Defendant, and each Defendant has continuously manufactured, distributed, and/or sold illegal products for over a year, according to product testing results.

**31.** Plaintiff relied on the representations on the label that the products she bought contained a legal amount or type of Delta 9 Tetrahydrocannabinol.

**32.** The Plaintiff would not have purchased any of the Products if Plaintiff knew that the representations that the Products purchased contained a legal amount of Delta 9 Tetrahydrocannabinol on the label were false and misleading.

**33.** Plaintiff chose the Products over similarly situated and represented products that contained a legal amount and type of Delta 9 Tetrahydrocannabinol.

**34.** The Products were illegal and worthless because the Products did not contain a legal amount of Delta 9 Tetrahydrocannabinol and the advertised amount of THC as well, and who would not have paid any money at all for the Products, absent Defendant's false and misleading statements and omissions.

**35.** Plaintiff intends to, seeks to, and will purchase D8 products again if and when Plaintiff can do so with the assurance that Product representations that the product contains a legal amount and type of Delta 9 Tetrahydrocannabinol are legal and truthful.

**36.** Plaintiff has also filed suit for negligent misrepresentation, fraud, and unjust enrichment/disgorgement.

**37.** As used in this Complaint, an illegal D8 THC vape means a vape that

contains more than 0.3% D9 THC hemp-derived THC by dry weight.

38. Each of the Products had a COA, and these COAs did not reveal that these products contained more than .3% d9 THC by dry weight.

39. Each of the Products was tested by *Infinite Chemical Analysis*, which was indicated to have a specific amount of THC. The August 3, 2023, testing of the Products showed the following retested hemp derived D9 variance levels:

a. MELLOW MONKEY, brand name Knockout, with a strain name of Pineapple Kush, ReTest D9 THC 2.09%, with D9% variance of 596.6666667%, above the legal limit;

b. EXTRAX, with a strain name of Blueberry Kush, ReTest D9 THC 5.33%, with D9% variance of 1676.6666667%, above the legal limit;

c. EXTRAX, with a strain name of Fire OG, ReTest D9 THC 2.37%, with D9% variance of 690%, above the legal limit;

d. EXTRAX, with a strain name of Pie Hoe, ReTest D9 THC 3.73%, with D9% variance of 1143.333333%, above the legal limit;

e. URB, with a strain name of Lemonade Kush, ReTest D9 THC 2.49%, with D9% variance of 730%, above the legal limit;

f. CRAVE, brand name Chill Blend, with a strain name of White Rhino, ReTest D9 THC 3.26%, with D9% variance of 986.6666667%, above the legal limit;

g. Packwoods, with a strain name of Sundae Driver, ReTest D9 THC 7.91%, with D9% variance of 2536.6666667%, above the legal limit; and

**h.** Packwoods, with a strain name of Melonade, ReTest D9 THC 2.86%, with D9% variance of 853.333333%, above the legal limit.

**40.** Like here, the *Journal of the American Medical Association* published a letter demonstrating the results of "undercover" purchases of CBD. Of 84 samples tested, THC was detected in 21%. There were other defects in the mislabeled products. Only 30.95% were accurately labeled. Accuracy of labeling depended on product type, with vaporization liquid most frequently mislabeled (87.50%) and oil most frequently labeled accurately (45.0 %). THC was detected (up to 6.43 mg/mL) in 18 of the 84 samples tested (21.43%). But Defendants appear to certify and sell products that contain 1000% of the allowed limit of D9 THC. Defendants knew or should have known that their products would be published over the wires and had been mislabeled. See e.g., Lab Reports Index | Delta 8 Resellers.

**41.** A study published by the National Institute of Health showed that products were mislabeled, with 26% containing less CBD than labeled and 43% containing more, indicating a high degree of variability and poor standardization of online products. Notably, the oil-based products were more likely to be accurate (45% compared to 25% for tincture and 12.5% for vaporization liquid) and had a smaller percentage of deviation. Oil-based products also had a higher range of concentration. In addition to CBD mislabeling, THC was detected in 21% of samples. This study also notes that products containing THC could have sufficient enough concentrations to produce intoxication in children.

**42.** Of course, in recent years, the United States Department of Justice has

largely declined to bring prosecutions under the federal cannabis laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into the D8 THC commercial hemp industry.

43. But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights under federal law. The Department of Justice can no more amend a federal statute than can any individual state and cannabis remains just as illegal under federal law today as it was when Congress passed the CSA.

44. Persons like the Defendant who market their products as medicinal should be held to reasonable production standards to make certain this "medicine" is legal. Plaintiff is filing this suit to vindicate federal rights under federal and state law.

45. Dealing in cannabis that contains more than 0.3% D9 THC by dry weight is an illegal activity under state and federal law, and those who engage in a pattern of unlawful activity should disgorge the profits and all monies received from the illegal transactions.

46. The manufacturing, distribution, and sale of Products with more than 0.3% D9 THC by dry weight is illegal. Plaintiff purchased the Products, set out hereinabove, that contained more than 0.3% D9 THC by dry weight. Defendants falsely, expressly or impliedly, warranted these products to contain less than 0.3% D9 THC by dry weight.

47. Reasonable consumers, like Plaintiff and the class members, rely on a

company to honestly identify and describe the Product's components, attributes, and features relative to itself and other comparable products or alternatives.

48. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant because it was illegal.

49. Defendant, Vape City, sold the Products at higher prices than it would have in the absence of this misconduct, resulting in additional and illegal profits at the expense of consumers.

50. Had Plaintiff and proposed class members known the truth, they would not have bought the Products because it is illegal.

51. Plaintiff and class members suffered injury as a result of Defendants' misrepresentations and omissions, including:

a. Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

b. Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed by Defendants to be compliant products; and

c. Plaintiff and class members were subjected to involuntary intoxication harming their physical, mental, and emotional health.

52. Each Product is sold for a premium price compared to other similar products, a higher price than it would otherwise be sold for, absent the misleading

representations and omissions.

## NON-RICO CLASS ALLEGATIONS

**53.** Defendant(s) maintains a database that identifies persons who purchase D8 products and the type of D8 products purchased from the corporate Defendants through credit card receipts and customer loyalty clubs. There are thousands of class members. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following class:

    **a.** All persons who bought one or more of the same Products purchased by Plaintiff identified above in the State of Texas who have a receipt or are identified in Defendant, Vape City's, purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Defendants have a controlling interest and legal representatives, heirs, successors, or assigns of any such persons.

**54.** Common questions of law or fact predominate and include whether Defendants' representations were and are misleading in violation of Texas and federal law and if the Plaintiff and the class members are entitled to damages or rescission. In this case, the key issues include:

    **a.** Did the Products purchased by the Plaintiff and Class contain the advertised amount of THC?

**b.** Did the Products purchased by the Plaintiff and Class contain more than .3% hemp derived D9 THC by dry weight?

**c.** Was the Product a Controlled Substance?

55.     Plaintiff's claims and basis for relief are typical to other members because all engaged in an illegal transaction unknowingly and are entitled to rescind the transaction.

56.     Plaintiff is an adequate representative because Plaintiff's interests do not conflict with other members.  Plaintiff's counsel is competent to represent the Class since they have previously served as Lead Counsel in certified class actions on multiple occasions. No individual inquiry is necessary since the focus is only on Defendant's practices, and the class is definable and ascertainable by Defendant's business records and receipts.

57.     Individual actions would risk inconsistent results and be both repetitive and impractical to justify, as the claims are modest relative to the scope of the harm.  Class action is superior because of the relatively small amount of money for each purchase.  Indeed, public policy does not encourage the sale of illegal drugs.

58.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

59.     Class members number in the thousands, and joinder would be impossible.

60.     As allowed by Rule 23(b)(2), Plaintiff seeks class-wide injunctive and

equitable relief because Defendant's practices continue, despite notice, and certain equitable remedies are sought. Plaintiff seeks classification under Rule 23(b)(1), (2), and (3).

**RICO CLASS ALLEGATIONS**

61.     RICO Class 1 is defined as any person who purchased a D8 vape manufactured by EXTRAX, MELLOW MONKEY, CRAVE, LIFTED MADE, and PACKWOODS from Vape City in the four years preceding the filing of this lawsuit to the date of certification. There are thousands of class members such that joinder is impractical.

62.     RICO Class 2 is defined as any person who purchased a D8 vape manufactured by EXTRAX, MELLOW MONKEY, CRAVE, LIFTED MADE, and PACKWOODS in the four years preceding the filing of this lawsuit to the date of certification. There are thousands of class members such that joinder is impractical.

63.     Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites for a class action: (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). See Fed R. Civ. Pro. 23(a). Each requirement has been met, and a Class is superior to any other means.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class Members prosecuting their separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases. Further, prosecuting separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

65. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

66. Defendants have facilitated the manufacturing, distribution, and/or sale of illegal marijuana to thousands of people over the course of the last four years. Therefore, the members of the Class are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. The Class is also objectively defined and presently ascertainable by

reference to records in the Defendant's possession. Their identification is a matter of ministerial determination from Defendant's receipts and/or sales logs. Thus, the Class has sufficient numerosity to be certified.

67.     Each Class Member has the same interest in buying accurately labeled products such that Plaintiff's claims, as well as the applicable defenses and their claims, are typical of the Class, and there are common questions of law. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: (a) Whether Defendants are operating a criminal enterprise; (b) Whether the products are accurately labeled and certified; (c) Whether each Defendant's conduct was knowing and willful; (d) whether the Products purchased by the Plaintiff and Class contain the advertised amount of THC; (e) whether the Products purchased by the Plaintiff and Class contain more than .3 % hemp-derived D9 THC by dry weight and (f) Whether each Defendant is liable for damages and the amount of such damages. Plaintiff's claims are typical of the Class members' claims, as they are all based on the same factual and legal theories.

68.     Class action is superior to all other forms of action because of the nature of the requested relief.  Also, Plaintiffs and the Class seek a permanent injunction requiring the Defendants to comply with federal law and disgorge the monies they have received. So, Plaintiff seeks certification under Rule 23(b)(1) and (2) and (3).

## NON-RICO COUNTS

## COUNT I – BREACHES OF EXPRESS WARRANTY, IMPLIED WARRANTY OF MERCHANTABILITY

**69.** Plaintiff incorporates by reference all preceding paragraphs and brings this Count individually against Defendant(s).

**70.** The Product was manufactured, labeled, and/or sold by Defendant(s) and expressly and impliedly warranted to Plaintiff and the class that the Products were a legal product that contained D8 THC, understood as being comprised of a legal amount of D9 THC, instead of the illegal amount received.

**71.** Plaintiff read, or relied on, specific marketing statements on the label and in the COA that the Products were legal before purchasing the Products on the box and the website. Therefore, Defendant made these representations before Plaintiff made a purchase. Defendant sells D8 THC Vape pens warranted as compliant with the Hemp Farming Act of 2018, meaning that these products contain no more than 0.3% D9 THC by dry weight. This representation is false. At the time Plaintiff purchased the Products, Defendant also warranted and represented through its website:

> A Certificate of Analysis or "COA" is a document from an accredited laboratory that shows the number of various cannabinoids in a product.

> Our company sends every batch of every product made to a third (3rd) party laboratory for testing to protect our customers. Our COAs also certify that our products have as much CBD and other cannabinoids as we advertise.

> Once you receive your product, there should be a QR code on the label that you can scan, and you will be taken to a web page with

the product's COA.

72.   Each Defendant's Products contain more than 0.3% D9 THC by dry weight or contain less D8 THC than advertised.

73.   Each Defendant has a duty to disclose truthful information or provide accurate descriptions and marketing of the Products they each manufacture, sell, and test.

74.   Before the filing of this Second Amended Complaint, one or more Defendants were made aware of the defects in the products at issue, yet Defendants failed to correct the defect.

75.   This duty is based on each Defendant's role in the market as a manufacturer, distributor, or retailer for this product type.

76.   Plaintiff provided, or will provide, notice to Defendant, its agents, representatives, retailers, and their employees.

77.   Each Defendant has previously received notice and should have been aware of these issues due to before the filing of this Second Amended Complaint.

78.   The Products do not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

79.   Plaintiff and class members would not have purchased the Products or paid as much for the Products if the facts had been known and, therefore, would not have suffered damages.

## COUNT II – NEGLIGENT MISREPRESENTATION

80. Plaintiff, individually and on behalf of the Class, incorporates by reference all preceding paragraphs against all Defendants.

81. Defendant(s) had a duty to represent the Product truthfully, and each Defendant breached this duty by understating the amount of D9 THC in the product.

82. This duty is based on each Defendant's position, holding itself out as having special knowledge and experience in this area as a manufacturer, distributor, or retailer.

83. Each Defendant's representations took advantage of consumers' lack of knowledge and their trust in each Defendant and their products.

84. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce, and did induce, their purchase of the Products.

85. Plaintiff and class members suffered injury as a result of Defendants' negligent misrepresentations and omissions, including:

   a. Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

   b. Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed by Defendants to be compliant products; and

c. Plaintiff and class members were subjected to involuntary intoxication harming their physical, mental, and emotional health.

86. Plaintiff and class members would not have purchased the Products or paid as much for the Products if the facts had been known and, therefore, would not have suffered damages.

## COUNT III - FRAUD

87. Plaintiff incorporates by reference all preceding paragraphs against all Defendants.

88. Each Product stated the product was in compliance with the Farm Bill on the label. Each Defendant therefore misrepresented and/or omitted the attributes and qualities of the Product, that it was a legal product that contained D8 THC, containing less than .3% hemp derived D9 THC by dry weight, instead of an illegal amount of D9 THC.

89. Each Defendant made material misrepresentations that they knew or should have known were false by stating the Products contained the legal amount of D8 THC as required by the CSA.

90. Each Defendant's fraudulent intent is evinced by its knowledge that the Product was inconsistent with its representations.

91. Each Defendant knowingly made these representations with the intent that Plaintiff and Class members would purchase the Products such that they should be punished with punitive damages.

92. Plaintiff and Class members reasonably relied on these

representations.

**93.** Plaintiff and class members suffered injury as a result of Defendants' intentional misrepresentations, including:

**a.** Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

**b.** Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed by Defendants to be compliant products; and

**c.** Plaintiff and class members were subjected to involuntary intoxication harming their physical, mental, and emotional health.

**94.** Plaintiff and Class members relied on these representations and were injured by purchasing illegal and worthless products.

## COUNT IV – UNJUST ENRICHMENT/DISGORGEMENT

**95.** Plaintiff and the Class incorporate by reference all preceding paragraphs against all Defendants.

**96.** Each Defendant obtained benefits and monies by selling illegal Products to Plaintiffs and class members.

**97.** Each Defendant knew or should have known the Products were not as represented and expected to profit from this knowledge to the detriment and impoverishment of Plaintiff and class members, who seek restitution and

disgorgement of these illegally obtained profits.

**98.** The Supreme Court has held that "if the new contract be fair and lawful, and the new consideration be valid and adequate, it will be enforced. If, however, it be unfair or fraudulent, or the new consideration so inadequate as to import fraud, imposition, or undue influence, it will be rescinded, and justice done to the parties." *Dent v. Ferguson*, 132 U.S. 50, 67, 10 S. Ct. 13, 19, 33 L. Ed. 242 (1889).

**99.** Each Defendant knew that the transaction between Defendant and Plaintiff and class members was illegal. Therefore, these transactions should be rescinded, a common fund created, and the monies restored to Plaintiff and the Class.

## RICO COUNTS
## COUNT V – VIOLATION OF 18 U.S.C. § 1962(C)

**100.** Plaintiff incorporates by reference the allegations of the preceding paragraphs.

**101.** "RICO creates a civil cause of action for '[a]ny person injured in his business or property by reasons of section 1962.'" *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 406 (5th Cir. 2003).

**102.** Common elements required to prove a violation of a subsection of § 1962 include: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

**103.** Hemp businesses that market their products as medicine should be

held to reasonable production standards to ensure this "medicine" is effective. But Defendants have intentionally refused to implement reasonable production standards, instead preferring to do business with crooked labs like MARIN ANALYTICS to provide fraudulent COAs. Plaintiff is filing this suit to vindicate her federal rights under RICO, 18 U.S.C. §§ 1961 et seq., the CSA, 21 U.S.C. §§ 801 et seq., and the Supremacy Clause. Indeed, those Defendants testing with Pharm Labs SD were never told by Pharm Labs that their products compliant with the Farm Bill, as the product label states.

104. Dealing in marijuana is racketeering activity under RICO, and those who engage in a pattern of racketeering activity through a corporation or other enterprise are liable for three times the economic harm they cause, plus costs and attorneys' fees. Those who conspire with racketeers by agreeing to assist them are likewise liable. RICO also gives federal courts the power to order racketeering enterprises and their coconspirators to cease their unlawful operations. Accordingly, The Plaintiff and the Class ask this Court to award them the damages, costs, and fees to which they are entitled, and both Plaintiffs request that the Court order the RICO Defendants to cease their open and notorious violation of federal law.

105. The individual defendants "conduct or participate, directly or indirectly, in the conduct of the LLC's affairs. 18 U.S.C. § 1962(c). Therefore, Defendants participate in the operation or management of the enterprise, see *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), because each Defendant is an enterprise member that plays a part in conducting

the enterprise's affairs. Each Defendant has contributed money and labor that furthered the pursuit of the profitable sale of marijuana whose THC content has been overstated. Here, the distillate makers like Pur IsoLabs, LLCs and the John Doe Distillate makers for the respective manufacturing Defendants conspired and agreed to manufacture illegal D8 vape pens, as herein described.

106.    Defendant Ali Sheikhani is responsible for all products purchasing and advertising from the various manufacturers and distributors.

107.    Defendant Ali Sheikhani received formal notice from Plaintiff that The Products did not comply with the requirements established in the 2018 Hemp Farm Bill Act.

108.    Defendant Ali Sheikhani continues to sell products that are illegal and contain excessive amounts of THC.

109.    Defendant Ali Sheikhani was aware of the unlawful amounts of THC, continued to approve ordering, advertising, and selling The Products by virtue of the conversations with counsel, but his company still continues to sell products that are noncompliant with the Farm Bill. Furthermore, Defendant Ali Shekhani promotes on his websites the legality of the vape pens in order to induce Plaintiff and the Class to purchase the product.

### Federal Law Prohibits the Manufacturing, Distribution, and Sale of Delta-9 Marijuana

110.    Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act. 84 Stat. 1236. Among the purposes of the CSA was to reduce drug abuse and the illegitimate traffic of controlled substances

in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

111.    When it passed the CSA, Congress found that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," *id.* § 801(3). The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade. Defendants have conspired to import, manufacture, distribute, and possess illegal D8 THC vape pens that are marijuana under the CSA.

112.    The CSA categorizes drugs according to a series of schedules, with the most dangerous drugs falling under Schedule I. *See id.* § 812(b). Schedule I drugs have "a high potential for abuse." *Id.* § 812(b)(1). In enacting the CSA, Congress classified marijuana as a Schedule I drug. *Id.* § 812(c). Congress thus deemed marijuana to have a high potential for abuse. *Id.* § 812(b)(1). By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the sole exception being the use of the drug as part of a Food and Drug Administration preapproved research study. *Id.* §§ 823(f), 841(a)(1), 844(a).

113.    The large-scale manufacture and distribution of marijuana is a serious felony under the CSA. A first-time offender convicted of producing or

distributing 1,000 or more marijuana plants is subject to a sentence of 10 years to life imprisonment. *Id.* § 841(b)(1)(A). Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40 years imprisonment. *Id.* § 841(b)(1)(B). The distribution and sale of smaller amounts of marijuana are punishable by maximum sentences that can be as long as 20 years. *See id.* § 841(b)(1)(C), (D). The CSA also criminalizes the possession of marijuana. Unless otherwise authorized by federal law, possession of marijuana by a first-time offender is punishable by up to 1 year of imprisonment. *Id.* § 844(a). Distillers like Pur ISO Labs manufacture distillate that is not hemp derived or contains an excessive amount of D9, then sell that distillate to one or more Defendant manufacturers.

114. In addition to its prohibitions on the distribution, sale, and possession of marijuana, the CSA also forbids a wide range of other activities connected with the operations of a marijuana business. Thus, it is a crime to possess "any equipment, chemical, product, or material" with the intention of using it to manufacture marijuana, *id.* § 843(a)(6), or to distribute any such material with the knowledge that it will be used to manufacture marijuana, *id.* § 843(a)(7). The CSA bars the use of a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, *id.* § 843(b), and it is a federal crime to use the Internet to advertise the sale of marijuana, *id.* § 843(c)(2)(A). Reinvesting the proceeds from marijuana operations is also a crime, *id.* § 854(a), as is knowingly facilitating a financial transaction involving funds derived from

manufacturing and selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960. But the Manufacturers and Pur Iso have done precisely this. It is also a crime to knowingly lease, rent, maintain, manage, or control a place where marijuana is manufactured or sold. 21 U.S.C. § 856. But the Manufacturers and Pur Iso have done precisely this. Leading a group of five or more people who commit a continuing series of federal marijuana crimes is a grave offense. *Id.* § 848. Attempting or conspiring to commit most of those crimes is also a criminal offense. *See id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a). Each of the Defendants have violated these statutes by conspiring to manufacture and distribute the Products.

115. These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear: marijuana is a dangerous drug that is banned throughout the United States. And because RICO defines most violations of the CSA as "racketeering activity," *see* 18 U.S.C. § 1961(1)(D), any business engaged in the manufacture and sale of Illegal D8 vape pen (marijuana) is a criminal enterprise for purposes of federal law. Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability RICO imposes. *See id.* §1962(c), (d). By virtue of the facts alleged herein, Defendants are liable to the Plaintiff and the Class for the purchase price of Plaintiff and the Class paid plus treble damages, fees, and costs.

### *The RICO Defendants Operate Racketeering Enterprises*

116. Plaintiff and the Class purchased products Defendants warranted falsely as having a certain percentage of hemp-derived D8 THC, as well as less than

.3% D9 THC by dry weight.

117. To reassure herself that the product was legal, Plaintiff had the Products tested. The tests revealed that the Manufacturer and Retailer Defendants routinely sell illegal D8 vape pens (marijuana) containing distillate manufactured by entities like Pure IsoLabs that has been falsely labeled to the Plaintiff and the Class by failing to disclose an excessive amount of D9 THC using distillate created by entities like Pur ISO using false lab results created by the Lab Defendants. This is the RICO enterprise.

118. The Savage Defendants, Mellow Monkey Defendants, Crave Defendants, the Packwood Defendants, the Lifted Made Defendants, sell illegal D8 vape pens (marijuana) with different types and amounts of THC to retailers like Vape City who then sell the illegal D8 vape pens to the Class. In essence, the Plaintiff and the Class are paying for legal hemp-derived THC but are receiving illegal marijuana, which has created millions of dollars of fraudulent profit. These actions damage Plaintiff and Class's property.

119. The Manufacturer and Retailer Defendants knew the Lab Defendants were misrepresenting the THC amounts because they had lab shopped to obtain the results they were seeking. When the honest labs refused to issue false COA's, the manufacturers would not do business with them.

120. Indeed, despite being sued and given notice of the product's illegality, the Savage defendants, with the assistance of its lawyer Michael Buley, continued to sell the illegal D8 vape pen product in this RICO enterprise. In fact, Wheeler

advised consumers like Erin Dupree, a Minnesota hemp retailer, that the Product was legal in 2022. In fact, the Product was not legal, which caused Ms. Dupree to lose her job as the leader of Office of Cannabis Management. Upon information and belief, the other officers of Savage, including their lawyer Buele, knew the product was illegal, yet each continued to promote and manufacture the product in an illegal manner. These Defendants knew the product could be manufactured legally but chose not to manufacture a legal product because it was too expensive.

121. The Lab Defendants also allow testing samples to be selected by employees whom the Manufacturer employs. This is a conflict of interest. This conflict of interest has allowed the Manufacturer Defendants to create false test results because the samples may not represent the product sold.

122. So, the Lab Defendants, in conspiracy with the manufacturers and the retailers, the individuals, and John Doe Defendants have misrepresented the amount of D9 THC in the hemp product Plaintiff brought to facilitate the sale of a controlled substance.

123. To facilitate this fraud, the Lab Defendants knowingly created false test results that were advertised over the internet hundreds of times for publication and marketing through the wires, and such activity is wire fraud.

124. Defendants intended that Plaintiff and the Class rely on these test results, and Plaintiff and the Class reasonably relied on the test results to their detriment.

125. The Labs understated the amount and type of D9 THC contained in

the marijuana by 600% in some cases.

126. Leasing or maintaining property for the sale and distribution of marijuana is a crime under 21 U.S.C. § 856 and is racketeering activity under 18 U.S.C. § 1961(1)(D). The Manufacturer and Retailer Defendants have leased or maintained property for the sale and distribution of illegal D8 vape pens (marijuana.)

127. Defendants, together with their respective accountants, law firms, and bankers, sued as John Does 200-1000, also conspired and agreed to work together so that the Defendants could sell D8 vape pens (marijuana) as legal hemp-derived THC and contribute to the ongoing violations of the CSA inherent in those operations. Entering such an agreement is conspiracy under 21 U.S.C.§ 846 and racketeering activity under 18 U.S.C. § 1961(1)(D).

128. Each Defendant used the telephone, email, internet, or other communication facilities to take steps in furtherance of their efforts to sell D8 vape pens that had been mislabeled hundreds of times unlawfully. Such uses of communication facilities violate 21 U.S.C. § 843(b) and are racketeering activity under 18 U.S.C. § 1961(1)(D).

129. Aided by the other Defendants, the retailer and the Manufacturer Defendants advertise illegal D8 vape pens (marijuana) for sale and their services over the Internet in violation of 21 U.S.C. § 843(c)(2)(A) in interstate commerce, and this is racketeering activity under 18 U.S.C.§ 1961(1)(D).

130. The Manufacturer and Lab Defendants together formed an open-

ended association-in-fact enterprise for the purpose of selling illegal D8 vape pens marijuana across the United States and selling it to retailers across the nation like Vape City for purchase by the Plaintiff and the Class. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the manufacture, sale, and distribution of marijuana that none of them could have achieved individually.

131. All of the RICO defendants and John Doe Defendants have contractual and other relationships with each other, and they are collaborating to contribute to the association-in-fact enterprise's efforts to sell marijuana and thereby engage in an ongoing pattern of racketeering activity.

132. All of the RICO defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of manufacturing and selling illegal D8 vape pens (marijuana). As stated above, that goal could only be accomplished through numerous CSA violations and wire fraud violations. Each such violation of the CSA is a racketeering activity, and all of the RICO defendants thus knew and intended that in agreeing to assist the enterprise, they would help it carry out a pattern of racketeering activity.

**Plaintiff and Class are damaged in their property.**

133. Plaintiff and the Class bought what they believed to be a legal hemp-derived D8 THC product, but the Products sold were illegal.

134. In fact, Plaintiff unknowingly purchased marijuana tested, manufactured, and falsely marketed by Defendants as having legal percentages of

D9 THC.

**135.**    Plaintiff, believing that the D8 product was hemp and accurately labeled, used the labels to determine which products to purchase because she did not want to break the law.

**136.**    Plaintiff had the illegal D8 vape pens tested at another lab. The tests revealed that product labels using Defendants test results significantly understated THC content.

**137.**    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants each violated this provision of 18 U.S.C. § 1962.

**138.**    RICO provides, inter alia, "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation" of this or the other substantive provisions of section 1962 "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

Thus, to establish their RICO claims, plaintiffs must prove "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). Regarding the first element of that test, a violation of section 1962(c) of RICO requires proof that defendants "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. at 882 (citation and internal quotation marks omitted).

139. An "enterprise" under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact. This definition encompasses informal associations and formal legal entities, and Plaintiff alleges both types of enterprises. Together with their respective John Does and members, each corporate entity like Savage, Lifted Made, Crave, Mellow Monkey, and Packwoods manufactures D8 vape pens with distillate from entities like Pur ISO, then sells marijuana. This is an enterprise because there is no dispute that each corporation is a "legal entity" and thus may constitute a RICO "enterprise." See *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001) An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct. Such an entity "need not have a hierarchical structure or a 'chain of command. . . . for it to exist requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Safe Streets*, 859 F.3d at 882-83 (citations and

internal quotation marks omitted).

**140.** Defendants test, manufacture, and sell the illegal D8 vape pens (marijuana) and therefore formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with other entities like, distributors, hired private accountants, private lawyers, banks, and Real Estate Holding companies that own the facilities that manufacture the illegal D8 vape pens, collaborating to develop illegal D8 vape pens to sell, all named as John Does 150-200. This enterprise enables the RICO Defendants to achieve their collective purpose more efficiently.

**141.** Funding, goods, and services procured by the enterprise have moved into interstate commerce, and the enterprise has transported marijuana in interstate commerce. The enterprises alleged herein affect interstate commerce. See *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2106, 195 L.Ed.2d 476 (2016). See also *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (noting term "affecting interstate or foreign commerce" conveys Congress's intent to exert its full power under the Commerce Clause). The Tenth Circuit has determined as much already. Safe Streets, 859 F.3d at 883 ("Cultivating, distributing, and selling marijuana . . . undisputedly affects interstate commerce.").

**142.** The Manufacturing Defendants purchase distillate from entities like **PUR ISO LABS, LLC**. Savage purchased distillate from Pur Iso, who then used the distillate to manufacture illegal D8 vape pens. The distillate contains heavy

metals, mycotoxins, or more than .3% D9 THC, by dry weight. The other distillate makers are sued as John Does 100-120.

**143.** Defendants, their respective officers, directors, and John Does have each conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. "Racketeering activity" under RICO consists of "dozens of state and federal offenses, known in RICO parlance as predicates," including most specifically for present purposes, "any offense involving . . . a drug-related activity that is 'punishable' under federal law." *RJR Nabisco*, 136 S.Ct. at 2096. As the Tenth Circuit determined, "cultivating marijuana for sale . . . is by definition racketeering activity." *Safe Streets Alliance*, 859 F.3d at 882. See 18 U.S.C. § 1961(1)(D) (racketeering activity includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance"). See also 21 U.S.C. § 802(16) (classifying marijuana as a controlled substance under the CSA). The Defendants Directors, and their officers, in association with each other, their respective banks, accountants, lawyers, and suppliers, entered into an agreement under which Defendants will commit numerous crimes under the CSA, and that agreement violates 21 U.S.C. § 856. They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of the manufacturer Defendant's open-ended illegal D8 vape pens (marijuana) business.

**144.** On information and belief, the Manufacturer and Retail Defendants used wire communication facilities to sell the marijuana and their drug conspiracy

in violation of 21 U.S.C. § 843(b).

**145.** Defendants possess materials, goods, and facilities for the manufacture of marijuana in violation of 21 U.S.C. § 843(a)(6) obtained in interstate commerce and continue to purchase solvents and other chemicals necessary to manufacture and test illegal D8 vape pens (marijuana). All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

**146.** Defendants have engaged in a "pattern" of racketeering activity established by proof of "a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *RJR Nabisco*, 136 S.Ct. at 2096-97.11 "It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle," as well as the actuality or threat of continued criminal activity, which establishes the necessary pattern. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238-39, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).12 "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id., 109 S.Ct. at 2901 (citation and internal quotation marks omitted). Continuity may be shown where "the predicates are a regular way of conducting defendant's ongoing legitimate business[.]" Id. at 2902. Both these elements are satisfied factually in this case. Defendants have manufactured and sold illegal D8 vape pens continuously since at least 2019.

**147.** Each act of advertisement over the internet, email solicitation, and

sale constitute a separate violation of the CSA and wire fraud and, therefore, a predicate RICO offense. These acts are related to one another in type and purpose. Moreover, Defendants' manufacture and sale of marijuana is their "regular way of doing business."

148. The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class's property by selling them illegal marijuana using the wires, email, and the US Mail. The websites operated by the Defendants are:

     a. **Sheikhani Group dba Vape City: https://vapecity.us/**

     b. **Mellow Monkey: https://mellow-monkey.com/**

     c. **Crave: https://cravedisposable.com/**

     d. **Lifted Made dba Lifted Liquids, Inc.: https://liftedmade.com/**

     e. **Savage Enterprises: https://savageenterprises.com/**

     f. **Delta Extrax: https://www.deltaextrax.com/**

     g. **Marin Analytics LLC: https://marinanalytics.com/**

     h. **ISO Analytics: https://isoanalytics.org/**

     i. **Packwoods: https://www.packwoods.com/**

     j. **Pur ISO Labs LLC: https://purisolabs.com/**

     k. **Feel Good Industry LLC: https://feelgoodindustryllc.com/**

149. Each solicitation for the sale of illegal D8 vape pens is a separate predicate offense. Racketeering activities undertaken by the Defendants have injured the Plaintiff and the Class's property by selling them legal hemp that was

actually illegal marijuana.

150.     The racketeering activities of Defendants directly and proximately injured Plaintiff and the Class's property by selling them D8 products that contained less D8 THC than advertised or illegal amounts of D9 THC. Defendants misrepresented THC values for commercial gain and to mislead Plaintiff and the Class, who could not know what was truly in the product.  Thus, Plaintiff and the Class are entitled to recission and a disgorgement of the purchase price.

151.     Plaintiff and the Class have been damaged in their property as follows:

a.  Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

b.  Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed by Defendants to be compliant products; and

c.  Plaintiff and class members were subjected to involuntary intoxication harming their physical, mental, and emotional health.

152.     As a result of Defendants' misconduct, the Plaintiff and Class seek treble damages, fees, and costs.

## COUNT VI - Violation of 18 U.S.C. § 1962(d)
### *Against All RICO Defendants*

153.     Plaintiffs incorporate by reference the allegations of the preceding

paragraphs.

**154.** RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Plaintiff and the Class have been damaged in their property by virtue of the Defendant's sale of illegal D8 vape pens with the assistance and knowing involvement of the Manufacturers like Savage, and the distillate makers like Pur Iso Labs, LLC, where the Defendants. This enterprise was aided and abetted by the other Defendants.

**155.** The Defendants, for their mutual and individual profit, agreed and conspired with each other and their respective John Does to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of selling illegal D8 vape pens marijuana across the US and selling it throughout the US, after testing with the Lab Defendants who agreed to provide false THC values and conceal harmful substance in the marijuana. The RICO Defendants knew that this was patently unlawful under the CSA. This scheme could only be accomplished through a pattern of racketeering activity, for maintaining premises at which marijuana is manufactured and sold, manufactured and selling marijuana, testing the marijuana, and possessing the goods and materials needed to manufacture and sell illegal D8 vape pens (marijuana) are all crimes under the CSA. *See, e.g.*, 21 U.S.C. §§ 841(a), 843(a)(6), 856.

**156.** Funding, goods, and services procured by the Defendants in

furtherance of their association-in-fact enterprise with each other and the respective John Doe Defendants. to manufacture illegal D8, vape pens (marijuana) have moved in interstate commerce, and the enterprise plans to sell marijuana across the US that affects interstate commerce.

157.    The Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c). All of the RICO Defendants violated 21 U.S.C. § 846 by agreeing and conspiring to assist in the establishment of each Manufacturer Defendant's creation, distribution, and sale of illegal D8 vape pens. Defendants and their agents entered into an agreement to sell marijuana and test marijuana in violation of 21 U.S.C. § 856.

158.    Racketeering activities undertaken in furtherance of the RICO Defendants' conspiracy to violate 18 U.S.C. § 1962(c) have injured the Plaintiff and the Class' property by selling them illegal marijuana represented as legal hemp.

159.    The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class' property by selling them illegal D8 vape pens, Defendants misrepresented THC values for commercial gain and to mislead Plaintiff and Class, who could not know what was truly in the product.

160.    The individual defendants "conduct or participate, directly or indirectly, in the conduct of the LLC's affairs.   18 U.S.C. § 1962(c). Therefore, Defendants participate in the operation or management of the enterprise, see *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), because each Defendant is an enterprise member that plays a part in conducting

the enterprise's affairs. Without the Distillate makers like Pur Iso providing distillate containing an illegal amount of D9, manufacturers like Savage could not produce an illegal vape product. Thus, each Defendant has contributed money and labor that furthered the pursuit of the profitable sale of marijuana whose THC content has been overstated, or understated.

161.    Plaintiff and the Class have been damaged in their property as follows:

a.    Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

b.    Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed by Defendants to be compliant products; and

c.    Plaintiff and class members were subjected to involuntary intoxication harming their physical, mental, and emotional health.

162.    As a result of the Defendants' misconduct, the Plaintiff and the Class seek treble damages, fees, and costs.

163.    Plaintiff and the Class have been damaged in their property by being defrauded of the purchase price and therefore seek treble damages, fees, and costs.

## JURY DEMAND AND PRAYER FOR RELIEF

**Plaintiff, LOREE PERRY, Individually and On Behalf of All Others**

**Similarly Situated, demands a jury trial on all issues**.

**WHEREFORE**, Plaintiff, **LOREE PERRY, Individually and On Behalf of All Others Similarly Situated,** prays for judgment:

a. Declaring this a proper class action, certifying Plaintiff as representative, and the undersigned as counsel for the class;

b. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

c. Injunctive relief to remove, correct, and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

d. Awarding monetary pursuant to any statutory claims and interest in accordance with the common law and other statutory claims;

e. Awarding costs and expenses, including reasonable attorneys' fees for Plaintiff's attorneys and experts;

f. Declaratory Judgment that the products Plaintiff purchased contained more than .3% D9 THC by dry weight;

g. Declaratory Judgment that the products Plaintiff purchased did not contain the amount of THC advertised on the label;

h. Treble damages;

i. Disgorgement or recission;

j. Any other and further relief as the Court deems and proper.

Respectfully submitted,

WALLACE, MARTIN, DUKE & RUSSELL, PLLC
3800 North Lamar
Suite 200
Austin, Texas 78756
(512) 522-4957
(512) 522-4957 FAX
Attorneys for the Plaintiff

By:       */s/ James Monroe Scurlock*
James Monroe Scurlock, TBR 24077350
jms@wallacelawfirm.com

**SUTTER & GILLHAM, P.L.L.C**.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501/315-1910 Office
501/315-1916 Facsimile
Attorneys for the Plaintiff

By:  */s/ Luther Oneal Sutter*
Luther Oneal Sutter, Esq., ARBN 95-031
luther.sutterlaw@gmail.com

## CERTIFICATE OF SERVICE

I, Luther Sutter, state that I have, on this 10th day of October 2024, served a copy of the foregoing upon the attorney of record through the electronic filing system, ECF.

Jose Vela, Jr.
CLARK HILL PLC
1000 Louisiana Street
Suite 2800
Houston, TX 77002
Email:  jvela@clarkhill.com
(713) 951-5607
(713) 951-5660 FAX
Attorney for Sheikhani Group, Inc.

David Ovard
CLARK HILL PLC
2600 Dallas Parkway
Suite 600
Frisco, Texas 75034
Email: dovard@clarkhill.com
(469) 287-3900
(469) 287-3999 FAX
Attorney for Sheikhani Group, Inc.

Michelle R. E. Donovan
ESPERANCE DONOVAN PLLC
21 N Main Street
Mt Clemens, Michigan 48043
Email: michelle@edlawpllc.com
(586) 436-7357
Attorney for Sheikhani Group, Inc.

Maliha Mian
Lekeaka Defang
MIAN & ASSOCIATES LAW FIRM, PLLC
2401 Fountain View Dr
Suite 460
Houston, Texas 77057
Email: mmian@mianlawfirm.com
Email: defang@mianlawfirm.com
(281) 968-4524
(281) 624-4821 FAX
Attorneys for Ali Sheikhani

_/s/ James Monroe Scurlock_
James Monroe Scurlock, TBR 24077350
jms@wallacelawfirm.com

_/s/ Luther Oneal Sutter_
Luther Oneal Sutter, Esq., ARBN 95-031
luther.sutterlaw@gmail.com